IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

HUA HARRAH, an individual, ANDREA
ULLOA, an individual and DEBORAH
MARTINEZ, an individual,

    Plaintiffs,
vs.

JULIA GARDENS PROPERTY OWNERS
ASSOCIATION, INC., a Florida not-for-
profit corporation,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR TRIAL BY JURY

Plaintiffs, Hua Harrah, an individual ("Owner") and the applicants for residency, or Andrea Ulloa, an individual ("Ulloa") and Deborah Martinez, an individual ("Martinez") (collectively "plaintiff applicants")[1] brings an action for damages and for injunctive relief against the defendant, Julia Gardens Property Owners Association, a Florida not-for-profit corporation (hereinafter "association") arising from the Defendants violation of the Federal Fair Housing Act, or 42 U.S.C. §3604 ("The Act") and for tortious interference with existing contractual and business relationships against the plaintiff Owner as follows.

I.     **INTRODUCTION, VENUE AND JURISDICTIONAL ALLEGATIONS**

1.    This is an action for damages and for injunctive relief associated with the association's conduct of violating the act through discriminating against the applicants in the rental of their respective dwellings based on familial status.

2.    It is also an action for damages on behalf on behalf of the plaintiff owner because the defendants conduct in violating the act through discriminating against the plaintiff tenants

---

[1] Where applicable, the owner and the plaintiff applicants are collectively referred to herein as "**Plaintiffs**".

Case 0:21-cv-60599-RAR   Document 1   Entered on FLSD Docket 03/17/2021   Page 2 of 11

*Harrah adv. Julia Gardens*
*Case No.:*

amounts to tortiously interfering with the right of the plaintiff owner to lease her property within the association to a qualified applicant.

3. The Court has subject matter jurisdiction arising from the association's conduct of violating the act.

4. The plaintiff owner is the owner of certain residential property located in the Southern District of Florida, Fort Lauderdale Division. The residential property is commonly described as 6875 Julia Gardens Drive, Coconut Creek, Florida 33073 and legally described as follows: HILLSBORO ASSOCIATES PLAT 148-15 B PORTION PARCEL A DESC AS: COMM AT MOST NLY WW COR PAR A NE 178.58 ALG N/L, S 582.39 NE 72.33 TO POB NE 24.00 SE 79.17, SW 24.00 NW 79.18 TO POB AKA: UNIT 4 BLDG 4 JULIA GARDENS (hereinafter "residential property"). The residential property is located within the Julia Gardens Condominium Complex and is therefore governed by certain governing documents for the administration of the defendant association.

5. A review of the Association Documents evidences the fact that the Association is not a 55 and over community and, therefore, families with children under the age of 18 are entitled to reside within the Association. In addition, the Association Documents do not prohibit the plaintiff landlords from leasing their respective units to third party tenants. The lease agreements are, however, conditioned on approval from the defendant association. The plaintiff owner has complied with all such obligations and should have been permitted by the defendant association to lease the residential property to, at a minimum, one of three separate prospective tenants. However, the defendant association discriminates based on familial status; the result of which has been an illegal and unjustifiable interference with the plaintiff and her right to lease the property to a prospective tenant; described below.

6. Plaintiff owner and the plaintiff applicants have retained the undersigned law firm and has agreed to pay the undersigned law firm a reasonable fee for the services.

2

**II.    THE PARTIES**

7. The plaintiff owner is the owner of the residential property located in the Southern District of Florida, Fort Lauderdale Division. The residential property is governed by the association's governing documents; copies of which are attached hereto as **EXHIBIT "A".**

8. The plaintiff, Martinez, is a single mother in the Southern District of Florida. She submitted an application to lease the residential property also located within the Southern District of Florida from the plaintiff, owner (hereinafter "The Martinez Application"). The Martinez Application was denied, however, by the defendant association due to the familial status of the plaintiff, Martinez.

9. The plaintiff, Ulloa, also resides and does business in the Southern District of Florida and submitted an application to rent the residential property located within the Southern District of Florida from the plaintiff, owner (hereinafter "The Ulloa Application"). The Ulloa Application was also denied by the defendant association due to the familial status of the plaintiff, Ulloa.

10. The defendant, association is a Florida not for profit corporation that provides the operation and management of the association property.

11. Venue properly lies in the Southern District of Florida because the parties are residing and/or are doing business in the Southern District of Florida and the residential property is located within The Southern District of Florida.

**III.    SUMMARY AND BACKGROUND OF THE ACT AND THE DEFENDANTS CONDUCT IN VIOLATING IT**

12. On September 13, 1988, Congress amended the Act to prohibit housing practices that discriminate on the basis of familial status. 42 U.S.C. § 3601 et. seq. In amending the Act, Congress recognized that "families with children are refused housing despite their ability to pay for it." H.R. Re. No. 711, 100th Cong., 2nd Sess. (1988). In addition, Congress cited a HUD survey that found 25% of all rental units exclude children and that 50% of all rental units have policies that restrict families with children in some way. *See* Marans, *Measuring Restrictive Rental*

*Practices Affecting Families With Children, A National Survey,* Office of Policy, Planning and Research, HUD, (1980). The HUD Survey also revealed that almost 20% of families with children were forced to live in less desirable housing because of restrictive policies. Congress recognized these problems and sought to remedy them by amending the Fair Housing Act to make families with children a protected class.

13. 42 U.S.C. §§ 3601-19. "Familial status", as relevant to this case, is defined by the Act as, in part, "one or more individuals (who have not attained the age of eighteen years) being domiciled with. . . .(1) a parent or another person having legal custody of such individual or individuals. . .. Id. at §3602(k); 24 C.F.R. §100.20.

14. Following the amendment of the Act in 1988, the defendant association has been discriminating against, in part, the plaintiff owner through the systematic refusal to approve the plaintiff owner's prospective tenants for leases for reasons that are pretextual. The real reason for the denial lies with respect that each of the plaintiff applicants have children and the denial, therefore, was based on illegal and discriminatory animus.

15. The property is a three-bedroom unit, so it is well suited for families with children. The plaintiff owner determined that the best use of the residential property was to lease the residential property and, in doing so, understood and agreed that the plaintiff owner is required to comply with the governing documents with the defendant association.

16. Article 10 of the governing documents provides, in part, as follows:

*******

**10.2. Leases**. No portion of a townhome unit. . ..may be rented. All leases shall be in writing and shall provide (or be automatically deemed to provide) that the association shall have the right to terminate the lease in the name of and as agent for the lessor upon default by tenant in observing any of the provisions of this declaration and the association documents. . ..An owner intending to make a good faith lease or renewal of a lease of a townhome unit shall give to the association written notice of that intention, together with the name and address of the intended lease, such other information concerning the intended lease as the association may reasonably require and a copy of the proposed lease. The intended lessee shall pay for and authorize a credit report and background check from a credit agency approved by the association. The association may deny approval based on the credit report and/or background check. Owners wishing to lease their townhome units may, if the board of director so elects, be required to place in escrow with the

association a sum of up to $500.00 which may be used by the association to repair any damages to the common areas or other portions of the property resulting from such acts or omissions of tenants (as determined by the sole discretion of the association).  The association shall not be required to pay or remit any interest on any such escrowed funds. The owner will be required by the association to effect such repairs or pay any claim for injury or damage to property caused by the negligence of the tenant.  Any balance remaining in the escrow account, less an administrative charge not to exceed $50.00 and exclusive of any interest retained by the association, shall be returned to the owner within ninety (90) days after the tenant vacates the townhome unit.

10.3 **Use Restrictions**.  No townhome unit shall be occupied by any person other than the owner thereof or the applicable members' permittees and in no event for other than as a residence.  Under no circumstances may more than one family reside in a townhome unit at one time.  In no event shall occupancy (except for temporary occupancy by guests) exceed two (2) persons per bedroom and one (1) person per den (as defined by the association for the purpose of excluding from such definition living rooms, dining rooms, family rooms, country kitchens and the like).  The Board of Directors shall have the power to authorize occupancy of a townhouse unit by persons in addition to those set forth above.  the provisions of this section shall not be appliable to townhome units used by the developer for model homes, sales offices, management services or otherwise.  As used herein, grandchildren and other persons permanently cohabitating the townhome unit as or together with the owner or permitted occupant thereof.  As used herein, "guest" or words of similar import shall include only those persons who have a principal residence other than the townhome unit.  Unless otherwise determined by the board of directors, a person occupying a townhome unit for more than one month shall not be deemed a guest but, rather, shall be subject to the provisions of this declaration which apply to leases and lessees.  The purpose of this paragraph is to prohibit the circumvention of the provisions and intent of this article and the board of directors shall enforce and the owners shall comply with, same with due regard for such purpose.

*********

17. The rules and regulations contained in the governing documents provide, in part, as follows:

> **All townhouse units shall be used only for residential purposes, as a single-family private dwelling for the owner the members of his/her family and social guests and for no other purpose.  Townhome units may not be used for business use or for any commercial use whatsoever except for a home office with no business traffic.**

18. The plaintiff owner complied with the governing documents, including the rules and regulations, through seeking the association to approve three separate applicants; or the Martinez Application; The Ulloa Application; and a third application submitted by an applicant that is not a party to the proceedings.

19.     **The Martinez Application.**  Regarding the Martinez Application, the applicant provided the defendant association with her paystubs, background check, and all other requisite forms.  From the background check, there is no evidence of any illegal or immoral activity that would preclude the applicant from lawfully residing within the association.  From the paystub information, the evidence demonstrated that the applicant was running a successful restaurant and had more than sufficient income to pay applicable rent.  Further, the applicant maintains a credit score of over 750.

20.     Martinez issued a letter to the association in January, 2021. The letter indicated, in part, that Martinez is a single mother and has a nanny who uses a vehicle registered in the name of her ex-husband to transport her children during the work week.  It further provides that her ex-husband would be stopping by the residence periodically to pick up the couple's children from time to time but would not be residing in the residence.

21.     The association refused to accept the application—going so far as to demand that Martinez's nanny—who does not reside with the family and would not be residing in the property—fill out an application for residency.  Further, the association required the applicant's ex-husband—who also would not be residing in the residential property—to also complete an application.  After months of refusing to accept the application, the applicant withdrew from further consideration; resulting in the plaintiff owner's loss of a valuable tenant and the plaintiff Martinez's inability to reside in the property that she desired at the subjective whim of the defendant association.

22.     The plaintiff owner requested answers from the defendant association.  The defendant association, through its property manager, communicated to the plaintiff owner on January 25, 2021 that the denial was based on the plaintiff owner's alleged failure to comply with the (i) governing documents; (ii) the rules and regulations; or (iii) the parking management regulations.  The plaintiff owner responded to the property manager on January 25, 2021 by requesting what specific parts of the governing documents were not complied with.  The plaintiff owner did not receive a response to such request.

23. **The Ulloa Application.** Regarding The Ulloa Application, all applicable forms were completed and submitted to the defendant association. At this time of the submission of the application, the applicant was working full time as a patient access manager with a large private medical company. The letter of recommendation further provides that proposed applicant, or Ulloa, had been gainfully employed by such company since May, 2014. It is further noted on the letter of recommendation that the applicant is "*dependable and responsible*". She was further described through a second letter of recommendation as "*an outstanding and dedicated mother to 4 beautiful children. . ..hard worker. . ..would be the best tenant. . ..responsible. . ..cares about her living space*".

24. The plaintiff Ulloa signed a lease with the plaintiff owner. The terms of which provide that the plaintiff Ulloa agreed to pay monthly rent totaling $2350.00 and further agreed to pay $2350.00 as a security deposit and an additional $2350.00 for the last month's rent.

25. One of the applicant's four children turned 18 years of age. The 18-year old was in school at the time of the application and was dependent on her mother. Therefore, the child did not have sufficient credit and, therefore, would not have the ability to qualify for the rental with the defendant association independent from her mother.

26. The association demanded the credit report from the 18-year-old dependent child of the applicant. Assuming that these children are still in school, what child who turns the age of 18 is going to be able to turn around and provide this sort of information to the Association? The answer is that it is an impossibility; it cannot happen. This is housing discrimination.

27. The plaintiff applicant walked away from the application and rented elsewhere; resulting in a loss of income to the plaintiff owner and the inability of the plaintiff applicant to rent in the housing that the plaintiff applicant desired.

28. **The O'Brien Application.** This applicant has a high credit score and a successful business. However, the applicant has two teenage children. The association denied the application. Its denial was based, on the surface, on the applicant's credit score and the fact that the applicant "*does not qualify within the guidelines of the association*".

29. The plaintiff owner requested information regarding the "*guidelines*". The association did not respond.

30. The plaintiff owner lost the opportunity to receive rental income from the denial of this application.

**IV.     COMPLAINCE WITH CONDITIONS PRECEDENT**

31. All conditions precedent has been met or has otherwise been waived or satisfied.

**COUNT I—VIOLATION OF 42 USCA §3604 (a) and (b)**
**(PLAINTIFF APPLICANTS vs. ASSOCIATION)**

32. Plaintiff Applicants readopt and reincorporate the allegations contained in Paragraphs 1 through 31, inclusive, as if specifically incorporated herein.

33. Plaintiff Applicants bring a cause of action sounding in violation of subsections (a) and (b) of the Act.

34. The Act provides, in part, as follows:

*******************

"As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

**(a)**     To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

**(b)**     To discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of age, color, religion, sex, familial status or national origin."

**********************

35. Association violated the Act through doing and/or failing to do the following: (i) the refusal to permit the plaintiff applicant to rent the property to either of the plaintiff applicants due to their familial status and; (ii) the implied implementation of policies that are designed to ensure that those with families and children are precluded from maintaining occupancy within the association through applicable lease agreements and (iii) any other implementation of express or implied rules and procedures designed to ensure such result.

36. As a direct and proximate result of the association's violation of such provision of the act, the plaintiff applicants have incurred damages. The damages are actual and punitive. The damages include, without limitation, the distress associated with being denied the ability to reside in the property that the plaintiff applicants desire and any other damages recognized at law.

## DEMAND FOR ATTORNEYS FEES

37. Plaintiff applicants further demand reasonable attorneys' fees and costs necessitated by bringing the pending action against association

**WHEREFORE,** Plaintiff applicants requests a judgment finding that the association's conduct is a violation of the act and further demands any further relief, including actual and punitive damages and reasonable attorneys' fees, costs and expenses that the Court deems fair, just and equitable.

## COUNT II—VIOLATION OF 42 USCA §3604 (a) and (b)
## (PLAINTIFF OWNER vs. ASSOCIATION)

38. Plaintiff Owner readopts and reincorporates the allegations contained in Paragraphs 1 through 31, inclusive, as if specifically incorporated herein.

39. Plaintiff Owner bring a cause of action sounding in the violation of 42 USCA § 3604(a) and (b) against the defendant association.

40. Association violated the Act through doing and/or failing to do the following: (i) the refusal to permit the plaintiff owner to enjoy the property in accordance with the governing documents of the association and (ii) the refusal to permit the plaintiff owner to lease the property to a suitable and qualified applicant on the basis of the applicant's familial status.

41. As a direct and proximate result of such conduct, the Plaintiffs have incurred damages. The damages are actual and punitive and include, without limitation, (i) economic damages associated with the inability to rent the property to well qualified tenants for rental income; (ii) loss of commissions associated with the inability to effectuate the rental agreements with the applicants; (iii) loss of marketability of the property and (iv) emotional distress that the

association has caused the plaintiff owner arising from the plaintiff owners inability to rent the property to well qualified applicants.

42. Plaintiff Owner further requests permanent or temporary injunction, a temporary restraining order, or other order (including an order enjoining the Defendants from engaging in such practice or ordering such affirmative action as may be appropriate).

## DEMAND FOR ATTORNEYS FEES

43. Plaintiff Owner further demand reasonable attorneys' fees and costs necessitated by bringing the pending action against the association

**WHEREFORE,** Plaintiff applicants requests a judgment finding that the association's conduct is a violation of the act and further demands any further relief, including actual and punitive damages, injunctive relief, and reasonable attorneys' fees, costs and expenses that the Court deems fair, just and equitable.

## COUNT II—VIOLATION OF 42 USCA § 3617
## (PLAINTIFF TENANTS AGAINST DEFENDANTS)

44. Plaintiff Tenants readopt and reincorporate the allegations contained in Paragraphs 1 through 30, inclusive, as if specifically incorporated herein.

45. Plaintiff Tenants bring a cause of action sounding in the violation of 42 USCA § 3617 against the Defendants.

46. 42 USCA § 3617 provides that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title".

## DEMAND FOR ATTORNEYS' FEES

47. Plaintiff Tenants further demand reasonable attorneys' fees and costs necessitated by bringing the pending action against the Defendants.

**WHEREFORE,** Plaintiff Tenants requests a judgment finding that the Defendants conduct is a violation of 42 USCA § 3617 and further demands any further relief, including actual

*Harrah adv. Julia Gardens*
*Case No.:*

and punitive damages and reasonable attorneys' fees, costs and expenses that the Court deems fair, just and equitable.

Dated this the 17th day of March, 2021.

                                                                                   Respectfully submitted,

THE LAW OFFICES OF GEOFFREY D. ITTLEMAN, P.A.
955 S. FEDERAL HWY STE 339
Fort Lauderdale, Florida 33316
Tel: (954) 462-8340
Fax: (954) 324-2037
geoffrey@ittlemanlaw.com

-and-

OMID JOHN, P.A.
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301
Tel: (954) 205-4247
esq@omidjohn.com


By:    /s/ *Geoffrey Ittleman*
        Geoffrey D. Ittleman, Esq.
        Fla. Bar No.: 377790